My understanding, Ms. King, is that you and the government are splitting time, is that correct? That's correct, Your Honor. Okay. And you have both reserved one minute for rebuttal, correct? That's correct. I believe the government would like to cede the one minute to me so that we have two minutes of rebuttal. Okay. And you'll let us know if something is off with the rebuttal, but when you are ready, you may proceed. Thank you, Your Honor. Good morning, everyone. May it please the Court. At heart, this appeal is one of statutory interpretation, which begins and ends with the text. And here, the text of the ADA defines who is protected from discrimination, and it articulates the purpose behind those protections. And based on the text of the statute, we urge this Court to join its sister circuits in holding that an employee who can perform the essential functions of her job, but with pain and difficulty due to a disability, is not precluded from asserting a failure to accommodate claim under the ADA. So what would you say, Counselor, about the fact that the school district argues that the way the complaint was written forecloses argument on the third element, in other words, that you specifically pleaded that the accommodation was necessary for Ms. Tudor to perform essential job functions. Does that make any difference to what it is that we're supposed to do here today? Well, in the complaint, you're right that Ms. Tudor believes that she needed the accommodation in order to perform the essential functions of the job, and we dispute that below. The district court assumed that she could perform, but we think there are facts in the record that actually put that into contention. She had to self-help in order to continue on her job. When the accommodation was first revoked, she went into the hospital for a week because she couldn't move forward with her job. And so there's plenty of evidence in the record creating a material fact of dispute on that question. So we are not conceding that it was, in fact, that she was, in fact, able to perform the essential functions of her job. Well, I guess my question is more or less, like, what are we supposed to do about or what would you say is the fact that it, we're not really debating what the statute means. We're debating or discussing how it was that you presented and argued the case and how much does that change the disposition of this particular instance? So I think that the error below was on two fronts. One is whether or not there was a material dispute of fact about her ability to perform the essential functions of the job, but even if she were able to perform the essential functions of the job, the primary holding of the district court and the very reason for denying summary, for granting summary judgment and not giving her the benefit of the factual dispute was this holding that is inconsistent with the text of the ADA and the interpretation of that text as indicated in Sixth Circuit decisions. And we think that the text clearly says, with or without an accommodation, performing the essential functions of the job, and that she falls squarely within that definition of the text. And the mere fact that some decisions shorthand and sort of summarize that provision should not be dispositive of what the actual statute requires in order for those protections to apply. So you're saying that the district court made an error of law in its statutory construction, that it's holding granting summary judgment turned on that misconstruction of the statute, and that we ought to remand, we make clear what the law is and correct that error of law and then send back for what exactly, trial on what? Trial on all the material facts that are in dispute, which does include whether or not she can perform, and all of the factual issues that are raised by the school district on appeal, those are all issues that, in fact, the district court himself found to be in 2-1, and 2-1 is ready for trial now. It's awaiting the decision here, and all of that will be tried together. Do we need to decide now whether expert testimony as to disability is required in order to establish someone's qualified individual with a disability, or is that a question that can be left for a later time? I think that's a question that can be left for trial. I know that there's an issue about authentication, but as the district court itself found in 2-1, that can be corrected before trial. That sort of hyper-technical issue is not something that would, you know, put her out of court or eliminate her claim, certainly not at the summary judgment phase, which should be in her favor on the factual disputes. So what should we tell the court to do if we follow your advice? I mean, if you have a person who cannot do the job without an accommodation, you can figure out what the accommodation is that's needed by reference to the standard of ability to do the job. If somebody can already do the essential functions of the job, what principles should guide a court in deciding what accommodations are needed, because they're needed for what? The accommodation here, at least, was proven to work because she had it for eight years. It was a very brief break in the morning and the afternoon. I think if this court is sending it back down for trial. It worked in what sense? That she was able to do the job. She was absolutely able to do the job. No issues at all with her performance and the accommodation. No one has argued that it was unduly burdensome for the school district to provide those accommodations, so that's not an issue. It may have become burdensome when she needed to be free of commitment to preside at the study hall. That's right. So there was no one to take her place. Right. It was the actual scheduling of her day, including giving her a study hall from which she was not allowed to leave because students may show up. That itself is the accommodation that we're taking issue with. And yeah, the school district has not claimed anything was unduly burdensome, either below or here. So how do you conceive of the essential functions of the job? I mean, you could say you need to know math to be a math teacher, and that's kind of the end of the story. You're qualified or not qualified to teach math. On the other hand, to perform the job, you need to be able to get there, get to the classroom, you need to be able to have a lunch break, eat, you need to be able to use the restroom, for example, as we've seen in some of these cases. How should we conceive of the essential functions of the job so that we can understand what it is to discriminate against someone with a disability for an inability to perform some part of that, you know, group of facets of a performance task? That is another way to look at it, to read essential functions of the job, to include things like performance without pain, transportation to the job, things like that. I think the more natural reading is to see essential functions to deal with the specific tasks of the job in question and not as broadly, and that the ADA's text, which says reasonable accommodation, with or without reasonable accommodation, that is what's required, that takes care of this issue of where do you put in this lack of pain provision or requirement. I think you could do it both ways. I think the more natural reading of the statute is to read essential functions to be more to the tasks of the particular job. Go ahead, please. I'd like to put a finer point on the pain and distress issue. How would you have us distinguish between pain and distress that an employer is required to alleviate and pain and distress that an employee may experience at work that an employer is not required to alleviate? I don't think you would take the position that it's all pain and distress. Yeah, we're not taking the position that anything... I mean, what is, and I think this is related to the conversation you were just having with Judge Carney. I do think that there are limiting factors and trying to distill what type of pain and difficulty rises to the level of protection. I think that gets into how you define the disability and whether or not you have a medical provider. And not the reasonable accommodation. Do you think that that is under the disability part and not the accommodation part? Well, I do think that the reasonable accommodation requirement does require the employer to alleviate that suffering and that anxiety if there is a reasonable way to do it that is not unduly burdensome. But in terms of, well, what kind of pain and suffering do you have to alleviate, that still goes back to whether or not it's tied to your disability and whether or not it's something that is a function of whatever the disability is, whether it's physical or mental. And that there will be medical support for that. It's not just someone saying, you know, I'm uncomfortable. But rather a medical basis for that pain and suffering tied to the disability itself. But in such a case, you wouldn't define the disability as, well, you would have to define the disability as something that substantially interferes with functions. But here it wouldn't be the ability to do the job. Because you can do the job without an accommodation. Yeah. You do see it's going in a circle. Well. The statute may require that. I don't. It may. I'm just trying to understand what on earth somebody was thinking who drafted the statute that way. If it means what you say it means. Right. I think that the disability does have to affect your sort of daily life and work is included in that provision. But I think the question really gets down to whether lack of pain is part of the essential functions of the job. This goes back to what Judge Carney had raised. And we could either read essential functions of the job to mean, you know, without pain, without any difficulty or challenges based on the disability. Or we can simply read it as, look, I'm otherwise qualified for the job. I can do the job. But I can only do it with pain. And therefore, a reasonable accommodation is necessary in order to alleviate that pain aspect, which is, you know, again tied to the disability itself. I think it's something like a modified work schedule, which the regulations identify as a potential reasonable accommodation. It's not that the employer would need to dole out, you know, pain medication. Correct. Correct. Yes. It deals with the circumstances and the work environment that the employer is able to control here, a break, part of the work schedule, and in our view, a very reasonable accommodation that nobody has argued was unduly burdensome. Okay. Thank you so much. We'll bring you on rebuttal with your colleague. Good morning, Your Honors. May it please the Court. Elisa Filo for the United States as amicus. The district court here did not consider the specifics of Tudor's disability, the reasonableness of her request, or the undueness of any hardship. Instead, the district court rejected Tudor's claim for a reasonable accommodation solely because she admitted that she was able to perform the essential functions of the job, albeit with pain and duress. This limitation on reasonable accommodation claims goes directly contrary to the clear command of the statute as supported by the EEOC's implementing regulations. So tell me, does Loper-Bride affect anything that we need to do? How do we consider the EEOC's regulations and guidelines when interpreting it? What are we supposed to do with the new Loper-Bride rule? Loper-Bride isn't relevant when the statute is clear. I'm actually having a hard time hearing you, if you don't mind. Of course. Is that better? Yes, please. If you pull down both of them. Both of them. Sorry. Loper-Bride isn't relevant where the statute is clear, and here the statute is unambiguous. The regulations simply support what is the clear understanding of the statute. The Fifth Circuit has a pithy footnote in Feist, I think it's footnote 4, that the issue of deference just isn't relevant when there's no hook in the statute for the contrary reading. Here the definition of a qualified individual could not be more clear. It is an individual who can perform the essential functions of the job with or without a reasonable accommodation. You would concede, however, that if the law entitles people to a modified work schedule if they have pain, that's sort of a runaway principle because everybody has pain doing something, and pain is not nice, and everyone would like it alleviated, and if it can be alleviated, it often can be with a modified work schedule, nobody will have any reliable work schedule. So I don't think it's a runaway train. I don't think this opens the floodgates. I think the statute itself includes other limiting principles. So the plaintiff still has to have a disability. The court is supposed to look at the limitations on the major life activities. So the pain would have to be one that limits major life activities, not, say, golf. It has to limit major life activities. That includes a pretty broad definition. It's not limited to just the essential job functions, but you have to be disabled. Excuse me, just one second. But here, her diagnosis was PTSD, right? Yes. And the schedule that she was on caused her the discomfort that she could overcome to do the job, but what made her a qualifying individual was that she was a math teacher and that she had PTSD, which substantially limited her daily functions, right? So this is a subset of the general population that placed her in the situation where she was covered by the statute. Yes. Am I right? I believe so, that the disability was PTSD. One of the ways that it limited her was this pain and suffering that she was asking to be accommodated with the second break. But to return to your colleague's question, the other limitations in the statute is that it must not impose an undue hardship on the employer, and it must affect the terms, conditions, and privileges of employment. And so it can't just be a personal benefit. It still has to be related to the workplace. But here, that is the case that she was asking for something related to her workplace. And an example makes this clear. Someone who— Well, what's the difference between a personal accommodation and one related to the workplace in this particular instance? That she was asking for something within her employer's control that related to the conditions of her workplace. She was asking for a modified work schedule to alleviate the pain and suffering that she felt while performing the essential functions of her job. So that surprises me. I thought you were going to say that in this case, there was at least some evidence in the record that the pain and distress was caused by some aspect of her work environment. And that was the way we should be understanding the difference between pain and suffering that an employer was required to alleviate and pain and suffering that wasn't. It sounds to me like you are making a different argument than the one that I thought you were going to make, which is that what the accommodation that needs to be done on the basis of whether or not it is related on reasonableness. So it's reasonableness, but also it has to still be job-related because of the limitation in the statute that it's related to terms, conditions, and functions of employment. So the statute makes very clear that an employer, absent undue hardship, which remains an important limitation, an employer must provide a reasonable accommodation to a qualified—to the known mental and physical limitations of a qualified individual if the failure to do so would affect the terms, conditions, and privileges of employment. And here it is clearly a condition of employment for her to work with pain and suffering. And so those kind of levers in the statute are ones that the district courts are used to working through. How reasonable is a request? What is the hardship? These are fact-specific, context-specific questions. You see that in Knoll, for example, where it wasn't whether or not she was entitled to ask for a reasonable accommodation at all. It was whether the request was reasonable. And sometimes requests will be unreasonable on their face. But it isn't the case, as the district court held here, that someone who is able to perform the essential functions of their job, albeit with pain and suffering, doesn't have the statutory right to a reasonable accommodation. So someone who works with back pain may be incentivized, who has to sit at their desk for a long time, may be incentivized to keep their job to endure that pain, but that doesn't mean they don't have the right to ask for a standing desk, and then the court would evaluate their specific disability, their limitations, whether that was reasonable and whether that imposed an undue hardship. That's how it should have worked here, and we ask the Court to reverse and remand. Thank you. We'll hear from your colleague, Mr. Knoll. Knoll. Thank you, Your Honor. Thank you. May it please the Court. My name is Scott Knoll. I represent the Whitehall Central School District, which is the defendant appellee in the action. I want to discuss or respond to one factual statement that was made by Ms. Tudor's counsel that was inaccurate, and it's an important factual distinction in this case. She said the class period, the study hall at issue in this case where Ms. Tudor was assigned to work, she was not allowed to leave. That is grossly inaccurate. The record clearly establishes that both the vice principal, the principal, and the superintendent of her school testified and affirmed that they were aware of the fact that she was leaving during her study hall. They had no objection to her doing so. The principal testified and affirmed. Wait a minute. Did they communicate that with her in any formal way that we will permit you to go so that it was clear that they were making an accommodation? Are you saying they just knew that she was sneaking out and they didn't do anything about it? I'm glad you used the word sneaking out, Your Honor, and I will answer your question. Ms. Tudor signed out during that school year 580 times, including approximately 180 times in the afternoon. So she was not sneaking out. But did she have any piece of paper from the school administration saying, we understand you have a condition and that you would like to be excused in the  It's okay. We're accommodating you. Yes. She did. So one of the things that's been brought up is the history between the district and this employee. Can you cite to the document? So in January of 2017, a formal meeting was held with Ms. Tudor at which the district agreed to provide or to allow her to leave school when she had free periods and breaks, including in the afternoon. That was memorialized in a letter sent to Ms. Tudor, which is in the record. Can you tell me where that is? I don't have the site, Your Honor, but I would be happy to supplement my submission with that to the court. Thank you. And that accommodation was part of the ADA interactive process. I can tell you about that meeting because I was there. And as an outgrowth of that meeting, Ms. Tudor was allowed to take afternoon breaks for the remainder of that school year, the 16-17 school year. All of this is quite relevant in terms of what accommodation was offered and what was reasonable. But the district court didn't rule on that basis. The district court ruled as a matter of law that this kind of claim is precluded if the accommodation is not required to allow somebody to do the essential functions of the job. And for whatever reason, the statute says that you're a qualified individual if you can do the essential functions of the job with or without accommodation. So the district court never really got to consider the argument that you're making, which sounds reasonable to me, although I think reasonable people could disagree as well. So it sounds like a fact finding that needs to be done by a district judge, and he never got to or she never got to do it. So this goes to something, and I forget which one of the justices raised the issue, but how the case was framed to the district court. This was phrased as a case, by a professionally crafted complaint, not by a pro se, as a case where an employer failed to accommodate an employee, and as a result of that, the employee was unable to perform her essential functions. That was the claim in the pleading. Sotomayor That's how it was framed. But the question is, what is before us is a disposition. It's an order of a court, and the only reason for dismissing it that's articulated, or the chief reason, is how the court read the statute. It sounds like the court read out two of the words. So I think the question is, is that what would you have us do if we believe the district court made an erroneous exposition of the law? What would you have us do in this circumstance? Whether or not we would ultimately agree that there was something not reasonable, whether or not she was disabled, there's a million reasons that could be still an issue, but what are we supposed to do if we think the district court incorrectly explained the law? I would be remand the case back to the court with a clear direction in terms of what the Americans with Disabilities Act requires and require a trial on it, which, as counsel has noticed, there is currently scheduled to be a trial on Ms. Tudor's first federal lawsuit. Your Honor raised the serious concern associated with the manner in which the statute, 42 U.S.C., well, the ADA statute, 12111 and 12112, the way they frame this issue of perform the essential functions with or without reasonable accommodation. You have to understand this is a statute that was written to address hiring, current employment, and terms and conditions of employment. And it's a problematic statute in the manner in which it's been written. But as the EEOC counsel just said, their regulations support a clear understanding of the statute. So I'm going to answer your question and say this. The question to the district court should be, did the district fail to provide an accommodation that Ms. Tudor needed for the purposes of being hired? And we know that has no application here. That's one of the reasonable accommodations identified by the EEOC. Two, did Ms. Tudor need an accommodation to perform the essential functions of her position? Ms. Tudor has conceded through written verification, verified discovery responses and conceded during her deposition that she was able to perform all of her essential functions during that school year. Or third, was Ms. Tudor entitled to an accommodation that would give her the same benefits and privileges of employment as all other employees? And you were contesting in your brief that whether she was disabled at all. Correct, Your Honor. We think that turns on an issue the lower court never addressed. When a party claims that they are disabled, they have the burden of proof on that aspect of their prima facie case. And you have to present admissible evidence of medical testimony, particularly in a case where we're talking about a psychological injury. We would never argue that in a case of someone who is a paraplegic. But when it comes to a psychological injury, you have to have some medical evidence presented to the district court. Ms. Tudor had her own self-serving testimony. They're varying views about the levels of proof that are required in different circumstances. But I'm just looking at your brief, and you're questioning as a matter of fact and law, I guess, whether she was disabled, whether there was, in fact, a failure to accommodate, whether what was provided as an accommodation, what was provided as a benefit or privilege of employment. And then we have the underlying legal question. So it seems to me that all of those are subject to revisiting by the district court on remand if we were to think that the district court was incorrect and omitting the clause in the statute that he seems to have overlooked. I believe what the lower court, in sidestepping those two critical questions as to whether Ms. Tudor is disabled and whether the district failed to accommodate her, is because the court addressed what it viewed to be the much more straightforward question of if an employee can perform their essential functions. And in this case, Ms. Tudor's claim is that she performed it with anxiety and stress. We keep using the word pain, and it's derived from cases where people talk about physical pain due to amputations, physical pain caused by walking long distances when you have mobility impairments. Ms. Tudor is claiming stress and anxiety. So let's be careful here, and this is not necessarily the case. Are you saying that that can't be a qualifying disability? I think it could be. And couldn't require an accommodation? PTSD absolutely could be a disability, Your Honor. And the stress and anxiety associated with self-accommodation, which is what occurred in this case, I don't know if that's sufficient under the law. I'm wondering whether being able to manage study hall, which in my day could get out of hand, is an essential function of the job. And if she can't do that, then maybe this whole issue of whether she can do it with without an accommodation doesn't really arise, because if she can't manage study hall, she's a teacher. That's one thing. It's not a desirable assignment, but it's an assignment which falls to teachers, and it's the principal who decides what you're going to do. You're going to teach golf as well as teach math, and you're going to do study hall. Why isn't that not an essential function of the job? In this case, Your Honor, there were no students in the study hall. The principal testified and affirmed that he placed no students in that study hall to facilitate Ms. Tudor taking her afternoon break. He testified that that was his sole purpose in assigning her as he did, and there's nothing to refute that testimony in the record. Ms. Tudor doesn't refute that testimony. Her testimony is he didn't tell her that the reason there were no students in the study hall was because so she could take her breaks. And I see I only have a few seconds, but I want to stress a couple key points here. What we have is an employee who, when it comes to the ADA, when I advise employers on this issue, what do you do when an employee comes forward, the number one thing we are focused on is removing barriers. Is it the barriers to performing the essential function, the barrier to enjoy the break room, the parking lot that all of their employees enjoy, the cafeteria? There's some barrier that it's our responsibility to eliminate for the disabled employees. And Ms. Tudor was given a schedule that allowed her to come to work every day. She had her best attendance that year. She had performed adequately. She was not counseled. She wasn't disciplined. She experienced no negative consequences in her employment whatsoever. And six months after these accommodations are in place, when schools shut down due to the COVID-19 pandemic, that's the very, actually it was months afterwards that she went to the EEOC and the district found out for the first time that this schedule that had been put in place was somehow viewed as an inadequate accommodation. So I see my time has expired. For the reasons stated below and the reasons stated in our brief, we would ask that this Court to affirm the decision of the district court dismissing Ms. Tudor's second action. Thank you. Thank you. Thank you. Let me start by addressing this assertion that there was some communication to Ms. Tudor allowing for the accommodation. That is absolutely not true and not consistent with the record. The January 2017 letter to which counsel.  She only has one minute for rebuttal, right? The government ceded that minute. Yes. That letter is found at A209 and 210. That clearly is before the time period that we're talking about. It does not address this afternoon's study hall that we are here discussing. That addressed a prior accommodation and the librarian situation, which is subject to Tudor I. On the point about pain and how anxiety isn't really that important, I guess, that tone, I think that's absolutely not consistent with the law. There is a medical diagnosis for PTSD here with significant anxiety and pain, emotional pain associated with the feelings of confinement that require her to just physically leave the facility and then come back. There's testimony in the record that she just drives her car down the street and she comes back. And that is significant to her because she has childhood trauma followed by a retriggering event where she feels that she cannot leave. And the fact that the accommodation here was to tell her she can't leave, but maybe we'll look the other way, you won't really know, is that's why it's not a reasonable accommodation. And that's where the pain caused by the solution proposed by the school district is so problematic here. And that's why there is additional pain on top of the underlying disability, which is PTSD and pain associated with not being given some break to mentally reset. And so I just want to conclude with there's been a lot of discussion about essential functions and performance. There is no dispute between the parties here that Ms. Tudor can perform all of the essential functions of her job with or without an accommodation. And that is why we are here today, and that's why we're asking the Court to clarify for the circuit. Thank you very much. Thank you very much. We will take this case under advisement, and we are grateful to the members of our CJA panel.